UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

FRANK LoCASCIO,
Reg. No. 36746-053                                   Docket No. 14 cv 64
FMC Devens
Post Office Box 879
Ayer, Massachusetts 01432


       Plaintiff

   vs.

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

       Defendant
_____

## PRELIMINARY STATEMENT

1.    This is an action under the Freedom of Information Act ("FOIA") , 5 U.S.C. § 552 et seq.,

    for injunctive and other appropriate relief, and seeking the immediate processing and release

    of agency records requested by plaintiffs from defendants Department of Defense ("DOD"),

    Department of Homeland Security ("DHS"), Department of Justice ("DOJ"), Department of

    State ("DOS"), and their above-named components.

## JURISDICTION AND VENUE

2.    This Court has both subject matter jurisdiction over this action and personal jurisdiction over

    the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This court also has jurisdiction over this

    action pursuant to 28 U.S.C. § 1331. Venue lies in the District of Columbia under 5 U.S.C.

    § 552(a)(4)(B).

-1-

3.      Plaintiff Frank LoCascio is a natural person currently incarcerated at the Federal Medical

Center, Devens, Massachusetts.

4.      Defendant Department of Justice (DOJ) is a Department of the Executive Branch of the

United States Government, and includes the component entities Federal Bureau of

Investigation (FBI), United States Marshals Service (USMS), the Drug Enforcement

Administration (DEA) and the Department of Homeland Security (DHS).  The DOJ is an

agency within the meaning of 5 U.S.C. § 552(f).

THE GOVERNMENT'S ACQUISITION OF THE TAPE RECORDINGS OF
OF NOVEMBER 30, 1989, AND DECEMBER 12, 1989, AND
THE UNDERLYING CRIMINAL CHARGES AND TRIAL

5.      Pursuant to a Title III warrant authorized during the latter part of 1989, the FBI placed

recording devices in an apartment over the Ravinite Social Club in New York, New York,

intending to capture conversations between John Gotti and other alleged members of the

Gambino Crime Family.

6.      Duplicate originals of all recordings were simultaneously made.

7.      Especially significant to Frank LoCascio, the Plaintiff herein, who stood trial with John Gotti

in *U.S. v. Gotti*, 90 cr 1051 (E.D.N.Y.),were recordings made on December 12, 1989, in

which a discussion was held concerning Gotti's intention to murder Louis DiBono. Gotti and

Frank LoCascio, the Plaintiff herein, were both convicted of conspiring to kill Louis

DiBono.[1]

---

[1]      It was the only murder of which Plaintiff was charged with, and is the reason he is
serving a life sentence. Without that conviction, Plaintiff could have been sentenced to no more
than 20 years incarceration. He has been incarcerated for more than 22 years.

8.  It was Plaintiff's contention that he opposed the murder of Louis DiBono, but portions of the tape recordings at issue were deemed "inaudible."

9.  Frank LoCascio, along with John Gotti, stood trial for six weeks, beginning in February 1992, on charges of substantive and conspiracy RICO violations of 18 U.S.C. § 1962(c) and (d), and a number of predicate acts charged as separate counts.  *See United States v. Gotti, et. al.*, 90-cr-01051 (ILG) in the Eastern District of New York.

10.  LoCascio was convicted of all counts except for those relating to an alleged gambling enterprise in New York.

PLAINTIFF'S FOIA REQUESTS AND DEFENDANTS' RESPONSES

11.  After learning that newer technologies could allow the tape recordings to be more fully deciphered, Plaintiff began the process of seeking production of the tape recordings, so that they could be analyzed using newer techniques.

12.  On March 31, 2012, through Attorney Ernest L. Nargi, Plaintiff wrote the FOIA Privacy Staff of the Executive Office for the United States Attorney (EOUSA), pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and the accompanying rules, 28 C.F.R. § 16.1 *et seq*. That letter, which was sent by certified mail, sought copies of "the 644 reels of tapes conversations from and near, about and above, the Ravinite Social Club as docketed on January 18, 1991, in the matter of *United States v. Gotti*, case number 90-cr-01051, in the Eastern District of New York."  (Exhibit A)

13.  The March 31, 2012, letter noted that the reels had been played in open court, and also requested that the request be expedited.  It also noted that the tapes were held by Carol Audio, and the FBI offices at 26 Federal Plaza in New York City.

-3-

14.     On May 2, 2012, Acting Assistant Director Susan B. Gerson wrote Mr. Nargi, assigning the request number 12-1433.  That letter set forth that the request would be placed in the order received for processing.  As a postscript (denoted, "Note") the letter denied the request for expedited processing.  (Exhibit B)

15.     By undated follow-up letter, Nargi stated that his FOIA request was dated March 29, 2012, and was received by the FOIA office via UPS on order about April 3, 2012.  The letter continued that a response was dispatched and received by Nargi's firm on or about May 5, 2012.  After receiving the response, Nargi left several voice messages for both Ms. Donna Preston of the EOUSA  and Ms. Gerson, including no fewer than 6 voice messages to Ms. Preston.  None of those messages resulted in a return telephone call. (Exhibit C)

16.     The undated letter continued that the last communication from Ms. Preston to Nargi's office had been a voice message left on or about May 4, 2012.  According to Nargi's letter, Preston's voice message had stated that an e-mail had been sent to the New York Eastern District Court, and that Nargi should following up with a telephone call.  Nargi's letter further stated that he had followed up and had yet to receive a response from the Court.

17.     Finally, the letter requested a written response as to the status of FOIA Request No. 12-1433.

18.     Nargi again sent a certified letter to Ms. Preston at the FOIA Privacy Staff of the Executive Office of the United States Attorney, on May 23, 2012.  That letter memorialized a conversation between Nargi and Ms. Preston, in which Nargi was informed that the Eastern District of New York would conclude its search on Friday May 18, 2012.  (Exhibit D)

19.     The letter further informed that, on May 22, 2012, Nargi contacted Ms. Preston, who informed him that nearly 100 boxes had been discovered, that the search of the boxes would

be narrowed down.  The letter stated that Nargi's request would garner two free hours of search time, which would commence, after which payment would be required.  Nargi requested the results of the search and written demand for payment.

20.     On June 7, 2012, Nargi sent another certified letter, this time to Susan B. Gerson, Acting Assistant Director of the Privacy Division of the Executive Office of the United States Attorney, outlining the communications to that date and requesting the results of the search. (Exhibit E).

21.     On June 29, 2012, Nargi again wrote Ms. Gerson by certified mail, reiterating the contents of the May 23, 2012, letter. (Exhibit F)

22.     On August 6, 2012, Nargi received a letter from the Executive Office of the United States Attorney's office, demanding an advance payment of One Thousand Nine Hundred Sixty ($1,960.00) Dollars to continue the search of the 99 boxes of files related to the Plaintiff's trial.  (Exhibit G)

23.     The letter also stated that, to reduce the fee, the requester could narrow down his request.

24.     On August 18, 2012, Nargi sent a certified letter to Mr. John Kornmayer at the FOIA/Privacy Staff, which letter was also transmitted by facsimile to 202-252-6047.   This letter set forth that the firm had no objections to the payment terms set forth in the August 6, 2012, letter, which had been received in Nargi's office on August 10, 2012. (Exhibit H)

25.     Nargi, however, also requested that he be allowed to be present when the search for the audio reels was conducted. He noted that no rule prohibited his presence.

26.     Nargi also informed that the reels might be in the possession of Carroll Audio in Mineola Long Island.  Nargi provided Carroll Audio's telephone number:  516-742-2073.

27.    On information and belief, the government has not contacted Carroll Audio to confirm that they had one of the two sets of duplicate original recordings.

28.    The office of counsel herein, Ruth M. Liebesman however, had called Carroll Audio in September of 2010, and spoke to owner Terra Carroll.  At that time, Carroll informed that her company maintained possession of one of the two sets of duplicate originals but would not provide them without permission of the United States Attorney's Office.

29.    On August 22, 2012, Nargi sent a certified letter to Ms. Gerson, in which he enclosed check no. 3257, in the amount of One Thousand Nine Hundred Sixty ($1,960.00) Dollars, pursuant to the August 6, 2012, letter sent to Mr. Nargi, described in paragraph 22, above.  (Exhibit I)

30.    On September 23, 2012, Nargi sent a certified letter, also transmitted via facsimile to 202-252-6047, addressed to Mr. John Kornmayer and Ms. Susan Gerson.  This letter was in response to a voice mail message received at Nargi's office from Mr. Kornmayer on September 21, 2012, at about 4:00 p.m. (Exhibit J)

31.    The September 23, 2012, letter summarized Kornmayer's message in which he claimed that the referenced pages provided by the Plaintiff to show that the tapes were, in fact, played in open court, were sealed.  Mr. Kornmayer further questioned which specific audio reels the FOIA applicant was demanding.

32.    Nargi's September 23, 2012, letter went on to state that the 644 reels of tape recordings made of conversations from and near, about and above the Ravinite Social Club located in New York, as docketed on January 18, 1991, in *United States v. Gotti*, 90-cr-01051 in the United States District Court for the Eastern District of New York were played in open court.  Mr.

Nargi went on to note that, in *Cottone v. Reno*, 193 F.3d 550 (D.C. Cir 1999), the United States Court of Appeals for the District of Columbia Circuit ruled that wiretapped recordings otherwise exempt from disclosure under the Freedom of Information Act *must be released* when a requester precisely identifies the specific tapes that have been introduced into evidence and played in Court during a public trial.

33.     Nargi further set forth that the tapes were created on November 30, 1989, and December 12, 1989, and that the FBI file numbers for the recordings were "183A-3507, SNY 2005."

34.     Nargi's letter further set forth that, if in fact two people were reviewing the trial transcript after receiving his check, 60,000 pages would have been reviewed in a months time and the entire review should be been completed.

35.     The defendants would thus have been able to be satisfied that the tapes had in fact been played in open court.

36.     An additional letter was sent on October 4, 2012, via facsimile to Ms. Gerson at 202-252-6047.  That letter set forth that Nargi had provided the Executive Office for the U.S. Attorneys a check for nearly Two Thousand ($2,000.00) Dollars to pay the costs of searching through trial transcripts to determine if and when these audio reels were in fact played in open Court. (Exhibit K)

37.     The October 4, 2012, letter also demanded an update as to the status of the search, as several telephone messages left by Nargi's office had been unanswered.

38.     That same day, an identical letter was set by facsimile to Mr. John Kornmayer, also at 202-252-6047.  (Exhibit L)

39.   On October 12, 2012, Nargi sent a certified letter to Mr. Kornmayer, in which he requested copies of the transcribed documents and reels in the possession of the United States Attorney's Office for the Eastern District of new York, which had been played in open court in the trial of *United States v. Gotti*.  Nargi again cited to *Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999), for the proposition that when the requester precisely identifies specific tapes that have been played in open court during a public criminal trial, the defendant in that criminal trial is entitled to obtain those reels.  (Exhibit M)

40.   Nargi's October 12, 2012, letter specifically identified the tapes as those made on November 30, 1989, and December 12, 1989.  He also set forth that the file number given those tapes by the FBI are 183A-3507, SNY 2–5.

41.   Nargi further set forth that, on information and belief, the tapes at that time could be located at 26 federal Plaza, Room 2600, New York, New York.

42.   On information and belief, the FOIA Privacy Staff never contacted the FBI's office at 26 Federal Plaza to determine if those tapes could be located there.

43.   The October 12, 2012, letter also stated that the Executive Office had been provided with specific sections of transcripts from the trial when the audio reels would have been played and that, despite Mr.  Kormmayer's assertions to the contrary, those transcripts were not sealed. He reiterated that the tapes had been played in open court.

44.   Nargi's October 12, 2012, letter also enclosed several pages of transcripts with the reference page numbers showing that the tapes had been played in open Court.

45.   The letter finally noted that it had been a month and a half since the United States Treasury availed itself of Nargi's check for almost Two Thousand Dollars.

46.     On October 15, 2012, Nargi again wrote John Kornmayer at the FOIA Privacy Staff.  The letter was sent via facsimile number 202-242-6047. (Exhibit N)

47.     Nargi's October 15, 2012, letter set forth that certain audio tapes were requested on behalf of Frank LoCascio by certified letter sent March 30, 2012, and received the following day by the Executive Office for the United States Attorney.

48.     Mr. Nargi's letter set forth that the Court reporter who created the transcripts of LoCascio's trial, at which the tapes were played, was Allan Sherman, whose telephone number is 718-613-2529.  Nargi's letter set forth that Mr. Sherman would be able to search his transcripts by exhibit number and locate the exact date and transcript page reference to prove that the tapes were played in open court.

49.     Nargi further noted that the transcripts were not sealed but that the fact of sealing would be irrelevant as the tapes had been played in open court and therefore must be turned over.

50.     On information and believe, the Executive Office made no effort to contact Mr. Sherman to request that he provide the proof that the tapes were played in open court.

51.     On October 23, 2012, Nargi again wrote Mr. Kornmayer and the FOIA Privacy Staff, requesting copies of the tapes, reiterating that they had been played in open court and therefore should be turned over to a defendant in that trial, Plaintiff herein, Frank LoCascio. (Exhibit O)

52.     Nargi again provided the dates the tapes were created, the FBI file numbers, and the fact that, on information and belief, one of the two sets of duplicate original tapes was located at the FBI offices at 26 Federal Plaza, New York, New York in room 2600.

53.     Nargi's October 23, 2012, letter further memorialized a conversation with Mr. Kornmayer, in which he stated that the section of the transcripts in which the audio reels were played was sealed.  Nargi again set forth that the tapes, having been played in open court, were required to be turned over pursuant to *Cottone v. Reno*.

54.     The government's failure to contact Carroll Audio, the FBI's offices at 26 Federal Plaza in New York City or the stenographer at LoCascio's trial has caused unnecessary expense and delay and guaranteed that the search for the tapes would be futile.

THE "PREMATURE" APPEAL

55.     On December 8, 2012, Nargi sent a certified letter to the Office of Information and Privacy, Administrative FOIA Appeal Division, at 1425 New York Avenue NW, Suite 11050, Washington, D.C. 20530.  (Exhibit P)

56.     The Appeal set forth the history of the FOIA request, informed that the tape reels had been played in open court on February 20, 1992, during the direct examination of the government's "expert" witness, FBI Special Agent Schilliro.  The jury was provided with a binder alleged to contain the words being spoken on the audio reels.

57.     The Appeal letter further set forth that Schilliro's testimony could be found on pages 2580 through 2690 of the trial transcripts, and that those transcripts had never been sealed and remain unsealed.

58.     The appeal further set forth that this information had been provided to Mr. Kornmayer at the Executive Office for the United States Attorneys by certified mail, facsimile transmission and several telephone conversations.

59.     Moreover, approximately Two Thousand ($2,000.00) Dollars had been paid for the government to unnecessarily have its minions review thousands of pages of transcripts to prove that the tapes had been played in open court, thus entitling LoCascio to their production.

60.     The Appeal letter stated that, after several months, Kornmayer represented that the "sections of the transcripts in which the audio reels had been played were in fact sealed." As a result, the requested audio reels were not available via FOIA demand.

61.     This was not true. None of the transcripts from Agent Schilliro's testimony had ever been sealed.

62.     Nargi's appeal letter set forth that, because Kornmayer claimed the transcripts were sealed and the audio reel therefore not available via FOIA demand, his office had informed Kornmayer that it would consider this erroneous determination to be regarded as an adverse determination, which he would immediately seek to remedy via administrative appeal.

63.     Nargi set forth that the first ground for appeal was the refusal to produce tape reels on the false ground that the transcript proving they had been played in open court was sealed.

64.     Nargi further set forth that the second ground for administrative appeal was the undue delay in addressing his request, which had first submitted on March 30, 2012, and received the following day at the Executive Office for United States Attorneys.

65.     Finally, Nargi complained that his firm had left nearly a dozen voice mail telephone messages for Mr. Kornmayer, Donna Preston and Assistant Director Gerson, all of which had been unanswered.

66.   Nargi did not appeal any determination that the tapes would not be produced because they could not be located, as that had not been the claim of the Executive Office when avoiding honoring its obligations under FOIA.

67.   On January 10, 2013, A letter from Priscilla Jones, Supervisory Administrative Specialist at the Department of Justice Office of Information Policy was sent to Mr. Nargi. (Exhibit Q)

68.   That letter acknowledged receipt of Nargi's appeal on December 14, 2012, nearly a month before.

69.   The letter assigned the appeal number AP-2013-01206, and stated that Nargi would be informed of the decision on the appeal as quickly as possible.

70.   On January 23, 2013, Sean R. O'Neill, Chief of the Administrative Appeals Staff, wrote Nargi that the Department of Justice regulations provided for an administrative appeal only after there had been an adverse determination by a "component."  (Exhibit R)

71.   According to Mr. O'Neill, despite the Executive Office's refusal to turn over the reels because it could not be proved that they had been played in open court, no "adverse determination" had yet been made by EOUSA.

72.   O'Neill's letter concluded with the statement that his office had forwarded a copy of Nargi's letter to EOUSA, and "I suggest that you contact EOUSA's Requester Service Center at (202) 252-6041 for further updates regarding the status of your client's request."

THE ADVERSE DETERMINATION

73.   On February 28, 2013, the EOUSA sent an adverse determination to Nargi in which, for the first time, it claimed that "a search for records located in the United States Attorney's

Office(s) for the Eastern District of New York has revealed no responsive records regarding the above subject." (Exhibit S)

74. No mention was made of the alleged search of the U.S. Attorney's archives in Missouri, for which $2,700 was paid by the requesters.

75. This is the first time that Nargi was informed that the problem with processing his request was based on an inability to locate the reels.

76. On information and belief, no effort was made to contact Carroll Audio, which admits it has one of the two sets of duplicate originals, but will not turn it over to LoCascio without permission of the United States Attorney's Office.

77. On information and belief, no effort was made to contact the FBI's offices at 26 Federal Plaza, New York, New York, where the second set of duplicate original reels was located.

THE APPEAL

78. On March 29, 2013, nearly a year after mailing the original FOIA request, Nargi sent an Appeal by certified mail to the Office of Information Policy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington DC 20530-0001. (Exhibit T)

79. The appeal letter set forth that Frank LoCascio, through his counsel, was appealing the decision of the Executive Office for the United States Attorneys, which held that, "*A search for the records located in the United States Attorney's office(s) for the Eastern District of New York has revealed no responsive records regarding the above subject.*"

80. The Appeal letter further noted that LoCascio requested the transcribed documents and reels in the possession of the United States Attorney's office for the Eastern District of New York on March 31, 2012.

-13-

81. The Appeal letter also set forth that the request sought the reels of tapes conversations from and near, about and above the Ravinite Social Club, which had been played in open court in the matter of *United States v. Gotti*, 90 cr. 01051, in the Eastern District of New York.

82. The letter further referenced *Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999), in which it was ruled that wiretap recordings otherwise exempt from disclosure under the Freedom of Information Act, *must be released* when a requester precisely identified specific tapes that have been introduced into evidence and played in open court during a public criminal trial.

83. Nargi's appeal letter further noted that the precisely requested audio reels had been identified by the dates on which they were made, November 30, 1989 and December 12, 1989, and that the FBI file numbers, 183A-3507 SNY 2005, had also been precisely identified.

84. Nargi went on to state that, on information and belief, the tapes were presently located at 26 Federal Plaza, New York, New York, Room 2600.

85. Nargi's Appeal letter went on to describe the torturous path the request had taken, including various letters, telephone calls and facsimiles.

86. He described the delays and Mr. Kornmayer's continued false insistence that the transcripts related to the introduction of the tapes into evidence were sealed.

87. Nargi also informed that he had telephoned both Mr. Kornmayer and Acting Assistant Director Susan Gerson throughout early 2013, detailing where the specific reels were located, and that Nargi had provided the contact information for Carroll Audio Service (516-742-2073) located in Mineola, New York, where addition copies of these reels were located.

88. Finally, Nargi set forth that, in February 2013, Kornmayer informed counsel that the audio reels could not be located. Again, Nargi set forth that he had informed Kornmeyer that he

should contact the Eastern District of New York and ask that they contact Carroll Audio Services to obtain the audio reels they could not located in the Eastern District of New York.

89.   On July 30, 2013, Nargi received a letter from Anne D. Work, Senior Counsel at the Administrative Appeals Staff for the U.S. Department of Justice, denying the appeal. (Exhibit U)

90.   Ms. Work set forth that, after carefully considering the appeal, she was affirming the EOUSA's determination.

91.   The denial mis-designated the request as relating to two tapes <u>played</u> on November 30, 1989, and December 12, 1989, in the <u>Southern</u> District of New York.

92.   As had been made abundantly clear throughout the request, the tapes were <u>create</u>d on November 30, 1989, and December 12, 1989.

93.   As had also been made clear in the Appeal and throughout the proceedings, the tape reels had been played in open court, before the Jury on February 20, 1992, during the direct examination of the government's "expert" witness, FBI Special Agent Schilliro.

94.   Moreover, as has been clear throughout, this case was from the Eastern District of New York, not the Southern District.

95.   As more of her "careful consideration" of the Appeal, Work set forth that, "while EOUSA does have some tapes associated with Case No. 90-cr-01051, *it could not determine which of those tapes were responsive to your reformulated request.*

96.   The FOIA request, however, had been denied because, allegedly NO reels could be located.

97.   The DOJ had suggested that LoCascio narrow down his request; his FOIA appeal was then denied because it had been narrowed down.

-15-

98.   All of the reels located should have been turned over, as all had originally been requested.

99.   This Complaint ensues.

CAUSES OF ACTION

FIRST CAUSE OF ACTION:

VIOLATION OF THE FOIA FOR FAILURE TO EXPEDITE THE
PROCESSING OF PLAINTIFFS' REQUEST

100.  Plaintiffs repeat and reallege paragraphs 1-99, and incorporate them by reference as though

fully set forth herein.

101.  Defendants' actions in falsely claiming that the transcripts proving that the reels had to be

produced pursuant to the District of Columbia's Circuit's decision in *Cottone v. Reno*, *supra*,

were sealed, was an intentional delay of the processing of LoCascio's request.

102.  Defendants also engaged in bad faith by insisting on being paid approximately $2,700.00 for

"searching" the Missouri archives for proof that the tapes were played in open court after

being provided with the name of the "Expert Witness" (Agent Schilliro) during whose

testimony the tapes were played, the date on which they were played (February 20, 1992),

and the relatively short  range transcript pages in which the reels referred to are played in

open court (pages 2580 through 2690).

103.  Defendants' failure to expedite the processing of Plaintiff's request, and the defendants'

intentional delays in providing the sought reels, violate the FOIA, 5 U.S.C. § 532(a)(6)(E)

(iii), and defendant agencies' own regulations promulgated thereunder.

SECOND CAUSE OF ACTION:

VIOLATION OF THE FOIA FOR FAILURE TO MAKE AVAILABLE
THE RECORDS SOUGHT BY PLAINTIFFS' REQUEST

104.    Plaintiffs repeat and reallege paragraphs 1-103, and incorporate them by reference as though

fully set forth herein.

105.    Defendants' failure to make promptly available the records sought by plaintiffs' request

violates the FOIA.

106.    The defendants have engaged in unreasonable tactics in order to avoid producing the

requested reels.

107.    Defendants have failed and refused to seeks the reels from Carroll Audio Services and from

the FBI's offices at 26 Federal Plaza, Room 2600, New York New York, despite being

repeatedly told that the tapes could be located in those two places.

108.    Defendants instead claimed that they could not locate the tapes, while searching in places

they were not to be found, and charging the Plaintiff to do so.

109.    After denying Plaintiff's FOIA request because NO reels could be found, the DOJ denied his

administrative appeal because TOO MANY reels have been located.

110.    Defendants actions are in bad faith, and violate the Freedom of Information Act 5 U.S.C. §

552 (a) (3) (A) .

THIRD CAUSE OF ACTION:

DEFENDANTS' SEARCH WAS INADEQUATE AS A MATTER OF LAW

111.    Plaintiffs repeat and reallege paragraphs 1-110, and incorporate them by reference as though

fully set forth herein.

112.   Defendants' search was inadequate as a matter of law.  Defendants have failed and refused to seeks the reels from Carroll Audio Services and from the FBI's offices at 26 Federal Plaza, Room 2600, New York New York, despite being repeatedly told that the tapes could be located in those two places.

113.   Defendants' claim that the reels could not be located, followed by an appeal denied on the ground that too many reels had been located proves that the initial search was inadequate as a matter of law.

114.   Moreover, the fact that Plaintiff originally had requested all reels, and limited his request at Defendants' suggestion, followed by the Defendants' claim that too many reels had been located to determine which met with the limited request, proves bad faith tactics by the Defendants, calculated to avoid complying with the FOIA request.

115.   Defendants claim that they cannot locate the tapes through searching in places they were not to be found and ignoring Plaintiff's attempts to steer them in the right direction proves that the search was inadequate as a matter of law.

116.   Defendants actions are in bad faith, and violate the Freedom of Information Act 5 U.S.C. § 552 (a) (3) (A) .

REQUESTED RELIEF

WHEREFORE, plaintiffs pray that this Court:

A.   Order that the Defendants immediately and expeditiously provide to the Plaintiff all reels located to date;

B.     Order that the Defendants obtain the requested reels from Carroll Audio Services in Mineola, Long Island, or from the FBI's offices at 26 Federal Plaza, Room 2600, New York New York and provide the same to the Plaintiff's forthwith;

C.     Order that the Defendants reimburse to the Plaintiff all monies paid to the EOUSA for purposes of "searching" the Missouri archives for proof that the tapes were played in open court after being provided with the name of the "Expert Witness" during whose testimony the tapes were played, the date on which they were played, and the relatively short range transcript pages referencing the playing of the reels in open court.

D.     Award plaintiffs their costs and reasonable attorneys fees incurred in this action; and

E.     Grant such other relief as the Court may deem just and proper.

Respectfully submitted

Dated: January 15, 2014

/s/ *Ruth M. Liebesman*
Ruth M. Liebesman, Esquire
36 Farview Terrace
Paramus, New Jersey 07652
201-617-7000
201-617-7710 (facsimile)
LiebesmanEsquire@aol.com